Thomas G. Hewlett

*v.*

Cincinnati, New Orleans & Texas Railway Company.

1. Public Policy.  *Contract to furnish bail.*

   A contract to furnish bail is not void, as being contrary to public policy; for public policy favors bail.

2. Contract.  *Breach of.  Damages whether proximate.  Case in judgment.*

   A railway company employed H. to act as detective in and about its business, agreeing to furnish H. bail in case he was imprisoned because of his acts in the discharge of his duty under the contract.  H., in such discharge of his duty, caused one P. to be arrested for wrecking the company's train.  While in the custody of the sheriff P. was seized by a mob and killed.  Afterwards H. was indicted, arrested and imprisoned for complicity in such killing.  He requested the company to furnish him bail, which it refused to do.  He was tried and acquitted, and thereupon brought an action against the railway company for breach of its contract. *Held,* that the facts stated do not constitute a breach of the contract.  The indictment, arrest and imprisonment of plaintiff were not the proximate but the remote result of the service he rendered the defendant in arresting P., and therefore not within the contemplation of the contract.

Appeal from the Circuit Court of Hancock County.

Hon. S. H. Terral, Judge.

This is an action of assumpsit brought by Thomas G. Hewlett against the Cincinnati, New Orleans and Texas Railway Company to recover damages for breach of a contract.

It is alleged in plaintiff's declaration that he was employed by defendant to act as detective, for, in and about its business; that because of the nature and character of such employment it was agreed between plaintiff and defendant, that if the former should be arrested or imprisoned, " the defendant undertook and promised to indemnify and save harmless the said plaintiff for and against all moneys laid out and expended by plaintiff in his necessary defence against and deliverance from said arrests and imprisonments, and criminal proceedings resulting from the performance by plaintiff of his said duties in obeying the

lawful orders and commands of said defendant; and that defendant would stand by and aid and assist plaintiff in defending himself against and delivering himself from said arrests, imprisonments and criminal proceedings, and cause bail bonds and recognizances to be furnished to plaintiff in such emergencies." The declaration further alleges that while such contract was still in force defendant ordered plaintiff to investigate the cause of an obstruction which had been placed on defendant's track and wrecked its train, near Purvis Station, in this State, and if sufficient or probable evidence was discovered to cause the arrest of the offender; that plaintiff went there, investigated the matter, obtained evidence, and caused one Parker to be arrested for having placed such obstruction on defendant's track, and that said Parker was turned over to the deputy sheriff of Marion county; that while Parker was still in the custody of the deputy sheriff he was seized and killed by a mob; that plaintiff was in Meridian, in this State, when such killing took place, and knew nothing whatever about it until after its occurrence; yet plaintiff, being wholly innocent, was indicted for participating in such killing, and was arrested therefor in Meridian and put in jail; that he immediately requested defendant to furnish him a bail bond for $5,000, the amount fixed by the proper authorities, but defendant wholly failed and refused so to do, though it was in the power of defendant to comply; that plaintiff remained in jail five days, and was only released after he and his friends had secured and given the required bail; that plaintiff spent the sum of $271.00 in and about his defence in this matter, and was in due time acquitted.

The defendant demurred to this declaration on the ground that the contract alleged was contrary to public policy, void and of no effect. The demurrer was sustained, and the plaintiff appealed.

*E. J. Bowers*, for the appellant.

The defendant in his demurrer assumes that a contract by an employer to furnish bail to his employee, if his employee should be arrested for doing a lawful act, at the request or in the service of the employer, is void as against public policy. This is precisely the contract sued on.

This is an assumption utterly unfounded in law. It is the moral duty of an employer to aid in every lawful manner his innocent employee when wrongfully imprisoned.

It is also his interest so to do, for having purchased the employee's time and services, he would lose both by the imprisonment of his employee. The argument that such a contract tempts or tends to encourage the employee to commit crime is without force. The contract does not cotemplate or have any application to the commission of crime.

An agreement to bail a person who is employed to commit a crime is of course void, simply because all contracts for the commission of crime are void. Such contracts make both parties criminals and principals in crime.

The argument that the bailing of a prisoner is an interference with, or an obstruction of the enforcement of the law, is equally fallacious. If this were true, bail would not be permitted by law. But the law delights in bail; secures it as an absolute right in all but capital cases, and permits it even in capital crimes. To facilitate the giving of bail the law excepts bail bond obligations from the privelege of our exemption laws.

*J. W. Fewell*, for the appellee

I contend that the manifest tendency of the contract was to encourage violations of law. If the alleged breach of the contract was a breach of the contract stipulations, the contract amounted to a general understanding that the railroad company should furnish bail for the plaintiff in any and every case of his arrest. Now the finding of the indictment was *prima facie* evidence that the plaintiff had committed murder—had gone with a mob and had killed Parker, the supposed train-wrecker. But I submit that a contract which promised to procure and furnish bail in any such case would not have been unlawful merely; it would have been criminal. The failure to furnish the bail was either not embraced by the contract—in which case the plaintiff could not recover—or, if it was embraced by the contract, the contract was null and void as being contrary to public policy. It cannot be presumed that the plaintiff would be called upon to find it necessary to procure bail except he violated the law; and therefore the contract to furnish bail was an

inducement to a violation of the law—an encouragement to such violation. It was a contract to save harmless from the consequences of an unlawful act, and therefore void. See Greenhood Public Policy, p. 211 *et seq.*

CAMPBELL, J., delivered the opinion of the Court.

We do not concur in the view that the undertaking declared on was contrary to public policy, and, therefore, void. Public policy favors bail, and a contract to furnish or procure it is unobjectionable. Greenhood on Public Policy, Rule 385, p. 450.

The demurrer is sustainable on another ground. The indictment and arrest and imprisonment of the plaintiff were not the *proximate*, but the remote result of the service he rendered the defendant in arresting Parker, and therefore were not within the contemplation of the contract, and the failure to procure bail for him in that case was not a breach of the contract.

*Affirmed.*